21-MJ-6001-MPK

# AFFIDAVIT OF SPECIAL AGENT JACQLEEN CUNNINGHAM IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Jacqleen Cunningham, state:

**Introduction and Agent Background**

1. I am a Special Agent with Homeland Security Investigations ("HSI") and have been so employed since June 2010. I have successfully completed a training program in conducting criminal investigations at the Federal Law Enforcement Training Center in Brunswick, Georgia. In 2007, I graduated from Sacred Heart University with a Bachelor of Science Degree in Criminal Justice. My current assignment as an HSI Special Agent includes conducting and participating in investigations involving the fraudulent acquisition, production, and misuse of United States immigration documents, United States passports, and various identity documents. Due to my training and experience, as well as conversations with other law enforcement officers, I am familiar with the methods, routines, and practices of document counterfeiters, vendors, and persons who fraudulently obtain or assume false identities.

2. I am also a member of HSI's Document and Benefit Fraud Task Force ("DBFTF"), a specialized field investigative group comprised of personnel from various local, state, and federal agencies with expertise in detecting, deterring, and disrupting organizations and individuals involved in various types of document, identity, and benefit fraud schemes. The DBFTF is currently investigating a group of suspects who are believed to have obtained stolen identities of other United States citizens from Puerto Rico and elsewhere. Many of these individuals used the stolen identities to open bank accounts and/or credit cards to fraudulently purchase, register, and/or export vehicles as part of a multi-state scheme involving financial fraud, auto theft, and the exportation of stolen goods.

3. This affidavit is being submitted in support of an application for a warrant to search electronic equipment, specifically two cellular phones, (1) a large iPhone with an identifying number of FCCBCGE3092A, within a red-backed case (the "red iPhone") and (2) a black iPhone 11 with an identifying number of DX6DCQMFN72J (the "black iPhone") (collectively, the "equipment"), which were seized during the execution of a federal search warrant at 66 Pleasant Street 2 in Methuen, Massachusetts, on December 21, 2020, and are in the possession of law enforcement investigators, as described in Attachment A. There is probable cause to believe that the equipment contains evidence, fruits, and instrumentalities of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, aggravated identity theft, in violation of 18 U.S.C. § 1028A, and false representation of a social security number, in violation of 42 U.S.C. § 408(a)(7)(B) (collectively, the "Target Offenses"), as described in Attachment B.

4. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

**Probable Cause to Believe That a Federal Crime Was Committed**

5. Since approximately January 2019, HSI special agents have been investigating a scheme involving the use of stolen identities to fraudulently open bank accounts, obtain credit cards, and purchase vehicles, many of which are then exported out of the United States. More specifically, the investigation has revealed a number of individuals using the stolen identities of United States citizens from Puerto Rico to fraudulently finance late-model vehicles from dealerships in Massachusetts, paying zero dollars down. At the dealerships, the individuals provide a variety of fraudulent identification and credit-related documents, including fraudulent

2

Puerto Rico driver's licenses and social security cards as proof of identification.   The perpetrators of this fraudulent scheme typically do not make payments on the vehicles, resulting in the dealership or relevant lending financial institution taking a total loss for the vehicles.   The individuals have also been successful in opening bank accounts in the same stolen identities prior to fraudulently purchasing the vehicles.   Individuals perpetrating the scheme max out associated credit cards within days or weeks and rarely make any payments on the accounts.   In connection with that scheme, on September 9, 2020, this Court issued a criminal complaint charging Alvin RIVERA ("RIVERA"), with false representation of a social security number, in violation of 42 U.S.C. § 408(a)(7)(B), and aiding and abetting the same, in violation of 18 U.S.C. § 2; aggravated identity theft, in violation of 18 U.S.C. § 1028A, and aiding and abetting the same, in violation of 18 U.S.C. § 2; and wire fraud, in violation of 18 U.S.C. § 1343.   See 20-MJ-6557-MPK.   RIVERA and five co-conspirators were indicted in connection with that scheme on October 6, 2020.   See *United States v. Rivera et al.,* 20-CR-10228-PBS (Dkt. No. 16).   Co-conspirator Andy MAZARA has been identified as a co-conspirator in that conspiracy, but was not charged in the District of Massachusetts; he is currently facing similar charges in the Northern District of Ohio.   See *United States v. Cabrera et al.*, 20-cr-00191-PAG-5 (N.D. Oh.).   Separately, Neida LOPEZ was also indicted for a similar conspiracy with RIVERA.   See *United States v. Neida Lopez,* 20-cr-40035-TSH (Dkt. No. 13).

      6.      Recent investigation has also revealed that some of these same individuals, including RIVERA and LOPEZ – along with Darwyn JOSEPH and Ramon CRUZ – were also involved in a scheme to use stolen identities to open bank accounts, to apply for Economic Injury Disaster Loans ("EIDLs") from the United States Small Business Administration ("SBA") and elsewhere, to accept funds from those loans through transfers into the fraudulent bank accounts,

and to launder the funds. On December 18, 2020, JOSEPH and CRUZ were charged by Complaint in the District of Massachusetts, with Conspiracy to Commit Wire Fraud and Aggravated Identity Theft, 20-MJ-6781 and -6782. Their scheme is described in detail in the Affidavit that I submitted in support of those Complaints, which is attached hereto as Exhibit 1 and incorporated by reference.

### Investigators' Possession of the Equipment

7. The equipment is currently in the possession of HSI, and is being stored at its facilities, as described in Attachment A. Investigators obtained the equipment in the following way: On December 21, 2020, during the execution of a search warrant of CRUZ's home at 66 Pleasant Street 2, Methuen, MA, *see* 20-MJ-6784-MPK, agents encountered Ramon CRUZ, Darwyn JOSEPH, and a third individual in the second-floor living area. Agents discovered numerous cell phones within the second-floor living area. One cell phone, which CRUZ claimed as his own, was an iPhone XS Max, found powered on and located in the living room on/near a circular table, near where CRUZ stated he had been sleeping when agents made entry. Also discovered on the table in the living room was another large iPhone, powered on, within a red case (the red iPhone). During the execution of the search warrant agents asked CRUZ, JOSEPH and the third individual which phones belonged to each individual. No one claimed the red iPhone. Due to the proximity of the red iPhone to CRUZ's phone as well as to where CRUZ had been sleeping, I believed CRUZ to be a user of the red iPhone such that it could be searched pursuant to the original warrant; however, out of an abundance of caution, after a preliminary review (described further below) indicated the phone might have once belonged to MAZARA, I am seeking a new warrant to search the contents of the red iPhone.

8. Concurrent to the execution of the search warrant at 66 Pleasant Street 2 (CRUZ's

residence), agents also executed a search warrant at JOSEPH's residence at 445 Broadway, Lawrence, MA, s*ee* 20-MJ-6783-MPK, which authorized the seizure and search of JOSEPH's cell phone.  However, JOSEPH was not present at 445 Broadway.  Instead, agents unexpectedly located both JOSEPH and his cell phone at 66 Pleasant Street 2, as he had recently moved into CRUZ's residence.  Specifically, agents found JOSEPH's cell phone – the black iPhone – inside the bedroom at 66 Pleasant Street 2 that JOSEPH told agents he had been sleeping in upon agents' entry, and JOSEPH confirmed that the black iPhone was his.  Because the search warrant for 66 Pleasant Street 2 did not authorize the search of phones other than phones believed to be owned or used by CRUZ, I am seeking a new warrant to search and seize the contents of the black iPhone, the equipment believed to be used by JOSEPH.

### Probable Cause to Believe That The Equipment Contains Evidence, Fruits, And Instrumentalities

9.   As described above, after the search warrant executed on 66 Pleasant Street 2, I believed the red iPhone was being used by CRUZ based on the fact that it was powered on and located near where CRUZ had been sleeping and where his other iPhone was located.  A preliminary review of the red iPhone revealed that the phone was associated with Apple ID "excitedgeeks@gmail.com" and username "Sonny's iPhone." This investigation has revealed "Sonny" is likely Andy MAZARA who was indicted in the Northern District of Ohio in connection with this investigation. Unrelated to this investigation, MAZARA was arrested by the Massachusetts State Police on June 22, 2020, and has been in custody since.  He recently had an initial appearance in the Northern District of Ohio on charges of conspiracy to commit bank fraud, bank fraud, aggravated identity theft, and interstate transportation of stolen motor vehicles, and consented to detention in that case.  My preliminary review of the red iPhone indicated that the

most recent date of activity was December 21, 2020, *i.e.*, the date of CRUZ's arrest. Additionally, the equipment appeared to be connected to CRUZ's WiFi, and CRUZ admitted to moving into the apartment within the last one to two months. CRUZ is familiar with MAZARA; in a post-Miranda interview, CRUZ stated that he was aware of an arrest of MAZARA that took place months back, although he stated that he was not related to MAZARA. Collectively, this information leads me to believe the phone may have belonged to MAZARA at one time, but was being used by CRUZ or someone else connected with CRUZ after MAZARA's arrest.

10.  As described in detail in the Affidavit in support of the Criminal Complaint against Alvin RIVERA, MAZARA was a member of the original conspiracy with RIVERA to fraudulently purchase cars using stolen identities. As described in more detail in that Affidavit, on October 4, 2018, MAZARA and RIVERA opened a bank account in Methuen, MA, using the stolen identity of a United States citizen M.A.R., and this incident was captured on surveillance video. A little over a week later, on October 13, 2018, MAZARA used the stolen name, date of birth, and social security number of M.A.R. in order to purchase a 2016 Honda Accord. A mugshot-style photograph of MAZARA, a photo of a fraudulent driver's license in M.A.R.'s identity but depicting MAZARA, and a photo of a social security card containing M.A.R.'s name and social security number, were later found on RIVERA's iPhone pursuant to a search warrant. Due to MAZARA's involvement in the crimes uncovered in this investigation prior to his arrest, CRUZ's involvement in the crimes uncovered in this investigation while MAZARA remained in custody, and the evidence suggesting that the red iPhone was used by both MAZARA and CRUZ, I believe there is probable cause that evidence, fruits, and instrumentalities of the Target Offenses will be found on the red iPhone, and I am seeking this warrant to search the contents of the red iPhone for the evidence described in Attachment B.

11. As set forth in my previous affidavit attached as Exhibit 1, there is also probable cause to believe that evidence, fruits, and instrumentalities of the Target Offenses will be found on JOSEPH's cell phone, the black iPhone.

12. As discussed above, the equipment is currently being stored by investigators at their facilities as described in Attachment A. From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

13. From my training, experience, and information provided to me by other agents, I am aware that individuals frequently use computer equipment to carry out, communicate about, and store records regarding their daily activities. These tasks are frequently accomplished through sending and receiving e-mail, instant messages, and other forms of phone or internet based messages; scheduling activities; keeping a calendar of activities; arranging travel; purchasing items; searching for information including information regarding travel and activities; arranging for travel, accessing personal accounts including banking information; paying for items; and creating and storing images and videos of their movements and activities.

14. Individuals involved in criminal activity, to include the planning and execution of identity theft schemes, communicate with each other through the use of cellular telephones. Additionally, I am also aware that individuals involved in criminal activity, to include the planning and execution of identity theft schemes, communicate using social media networking sites like Facebook, Snapchat, WhatsApp, etc. which can be accessed through cellular telephones.

15. Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones (which are included in Attachment B's

7

definition of "hardware") can now function essentially as small computers. Apple iPhones, such as the equipment, are a type of smartphone. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

16. From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B in mobile phones, computer hardware, computer software, and storage media.

17. Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

> a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.
>
> b. Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.
>
> c. Wholly apart from user-generated files, electronic storage media often contain electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.
>
> d. Similarly, files that have been viewed over the Internet are sometimes

automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

e.     Data on a storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

f.      As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files,

along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

g.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

h.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

18.  This warrant authorizes a review of electronic storage media seized, electronically stored information, communications, other records and information seized, copied, or disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HSI may deliver a complete copy of the seized, copied, or disclosed electronic data to the

custody and control of attorneys for the government and their support staff for their independent review.

## CONCLUSION

19. Based on the information described above, I have probable cause to believe that Ramon CRUZ, Darwyn JOSEPH, and Andy MAZARA have violated 18 U.S.C. § 1349; 18 U.S.C. § 1028A; and 42 U.S.C. § 408(a)(7)(B).

20. Based on the information described above, I also have probable cause to believe that evidence, fruits, and instrumentalities of these crimes, as described in Attachment B, are contained within the equipment described in Attachment A.

Signed under the pains and penalties of perjury this 5th day of January, 2021.

/s/ Jacqleen M. Cunningham
_____
Jacqleen M. Cunningham
Special Agent
Homeland Security Investigations

Subscribed and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 this 5th day of January, 2021.

*Page Kelley*
_____
HONORABLE M. PAGE KELLEY
CHIEF UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS